IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,691

STATE OF KANSAS,
*Appellee*,

v.

JOHN C.T. BOESE,
*Appellant.*

SYLLABUS BY THE COURT

1.

The charging document in any specific case sets the outer limits of the conviction or convictions that can result.

2.

When a defendant is convicted of a crime that was not charged, the conviction must be reversed.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 21, 2025. Appeal from Marion District Court; SUSAN C. ROBSON, judge. Oral argument held October 29, 2025. Opinion filed May 22, 2026. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the briefs for appellant.

*Steven J. Obermeier*, assistant solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the briefs for appellee.

1

The opinion of the court was delivered by

STEGALL, J.: John C.T. Boese was found guilty of a crime that he was not charged with committing. The State urges this court to find this discrepancy harmless. We cannot. We affirm the Court of Appeals' decision and reverse Boese's conviction and vacate his sentence. *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018) ("[T]he charging document in any specific case . . . sets the outer limits of the conviction . . . that can result.").

FACTS AND PROCEDURAL BACKGROUND

The facts of this case are generally undisputed, and Boese does not contest the district court's factual findings on appeal. Boese argues that the State failed to present sufficient evidence to support his conviction because he was charged with a violation of a protection from "abuse" order under K.S.A. 21-5924(a)(1) (a PFA) but the evidence supported only a violation of a protection from "stalking" order under K.S.A. 21-5924(a)(6) (a PFS).

Boese and M.M. had three children together in a long-time rocky relationship. In January 2021, M.M. decided she needed to get away from Boese. Over the next several months, Boese sent her constant unwanted emails, texts, and voice messages. In March, M.M. did not have anywhere else to go after Boese threatened her with a gun, so M.M. began living with Boese's mother.

On April 8, 2021, M.M. received several texts from Boese stating that he would kill himself or kill her. M.M. contacted the sheriff to request a welfare check on Boese. The next day, M.M. received a temporary order of protection from stalking, sexual assault, or human trafficking against Boese. In seeking the order, M.M. listed Boese's mother's home as her home address.

2

A week after the PFS was granted, Boese texted his mother; each of his messages referenced M.M. Boese's mother was upset by the texts and showed them to M.M. In May, Boese sent more upsetting texts to his mother. Mother shared them with M.M. because she "knew the situation, and [M.M.] needed to know, for her own protection . . . everything that was going on." Boese sent more messages to his mother in June, which his mother shared with M.M. because it seemed like he was blaming M.M. for losing his job. On July 20, 2021, the district court issued a final protection from stalking, sexual assault, or human trafficking order against Boese—which remained in effect until July 14, 2022.

On August 2, 2021, the State charged Boese with violation of a protection order under "K.S.A. 21-5924*(a)(1)*, (b)(1)," a class A misdemeanor, alleging he had contacted M.M. directly or indirectly in violation of the temporary protective order. (Emphasis added.) More specifically, the complaint alleged that Boese willfully and knowingly violated "[a] protection from *abuse* order issued pursuant to *K.S.A. 60-3101* et seq." (Emphases added.)

The State later amended the complaint, changing the charge to specify the facts: "Boese, sent messages to [his mother], who the protected person, [M.M.] is residing with . . . ." The amended complaint still identified the order Boese violated as a protection from *abuse* order and cited to K.S.A. 21-5924*(a)(1)*, (b)(1) as the statutory basis for the charge.

The district court held a bench trial on June 24, 2022. At the State's request, the district court took judicial notice of the temporary PFS as well as the final PFS order. During the trial, both parties, witnesses, and the district court judge referenced the orders as PFA's and PFS's—using the terms interchangeably in some instances and self-correcting to PFS at other times.

At the close of evidence, the district court orally stated that Boese "violated the PFS, and I find him guilty of this." However, the journal entry of judgment recorded the conviction as a violation of K.S.A. 21-5924(a)(1) ("Violation of a protective order is knowingly violating:  A protection from abuse order . . . ."). Also, at sentencing, the judge referenced Boese's conviction as "one count of violation of a PFA" and sentenced Boese to serve 12 months in the county jail but granted him 12 months' probation. Boese timely appealed.

On appeal to the Court of Appeals, Boese argued, as he does in this appeal, that the State failed to present sufficient evidence to support his conviction because it charged him with a violation of a protection from "abuse" order under K.S.A. 21-5924(a)(1) but the evidence supported only a violation of a protection from "stalking" order under K.S.A. 21-5924(a)(6). The panel agreed, finding that the State charged Boese with one form of a violation of a protective order and then proved that he committed another, leaving no evidence to support the charged crime. *State v. Boese*, No. 125,691, 2023 WL 8664526, at *5-6 (Kan. App. 2023) (unpublished opinion), *vacated* (Kan. November 27, 2024).

The State petitioned this court for review, arguing that Boese's conviction presented an alternative means/option within a means issue under K.S.A. 21-5924 generally, and that subsections (a)(1) (PFA) and (a)(6) (PFS) were options within a means. After considering the State's petition in 2024, this court summarily vacated the panel's decision and remanded the case for reconsideration in light of *State v. Reynolds*, 319 Kan. 1, 2, 552 P.3d 1 (2024), which overruled the super-sufficiency test for alternative means jury instructions from *State v. Wright*, 290 Kan. 194, 206, 224 P.3d 1159 (2010).

Following this court's directive, the same panel reconsidered Boese's case and determined that *Reynolds* didn't apply and its holding was "irrelevant." The panel distinguished the cases because *Reynolds* involved a defendant's claim that a jury instruction contained an alternative means error. In Boese's case, the charging document did not contain alternative means and, being a bench trial, there were no jury instructions. Specifically, relying on *Fitzgerald*, the panel concluded that Boese "can be convicted only of the crime he was charged with committing" and that the State "never proved that crime." *State v. Boese*, No. 125,691, 2025 WL 574027, at *7-8 (Kan. App. 2025) (unpublished opinion).

The State filed another petition for review with this court and continues to allege that the district court's finding of guilt creates an alternative means issue and is therefore subject to harmless error review under *Reynolds*. Boese continues to assert that there is insufficient evidence to support his conviction for a violation of a PFA order.

ANALYSIS

As a preliminary matter, we acknowledge that the parties present the "sole" issue in Boese's case under very different legal theories. The State presents the case as an alternative means question while Boese asserts this case turns on whether sufficient evidence supported his conviction. Upon review, both parties' legal arguments miss the mark. In fact, Boese's case is straightforward under our precedent of *Fitzgerald*, 308 Kan. at 666, and *State v. Ward*, 307 Kan. 245, 259-60, 408 P.3d 954 (2018).

We have clearly stated: "[T]he charging document in any specific case still sets the outer limits of the conviction or convictions that can result." *Fitzgerald*, 308 Kan. at 666. See *Ward*, 307 Kan. at 259-60 (State failed to prove crimes charged, regardless of

5

whether it may have proved another crime; conviction reversed); see also K.S.A. 22-3201(a) ("Prosecutions in the district court shall be upon complaint, indictment or information.").

The facts of Boese's case are equally as clear. Boese was charged with violating a PFA order under K.S.A. 21-5924(a)(1) but the district court unequivocally declared that Boese was guilty of violating a PFS order.

Contrary to the State's argument, such a discrepancy does not manifest an alternative means issue. In some cases, the State may choose to charge a defendant with a crime that can be committed in more than one way. Generally, this is called an "alternative means" crime. *Reynolds*, 319 Kan. at 4. The State argues that K.S.A. 21-5924 presents six alternative means, contained in subsections (a)(1) through (a)(6), of committing the offense of "violation of a protective order." Regardless of whether the State is legally correct that K.S.A. 21-5924 contains alternative means for committing a crime—a question we need not reach—factually the State failed to charge Boese with any alternative means. The State clearly, precisely, and exclusively charged Boese under a single means—K.S.A. 21-5924(a)(1).

The amended complaint identifies the specific statutory subsection, (a)(1), and correctly names that subsection as pertaining to a PFA order. The complaint also contains the correct citation to the statutes in K.S.A. 60-3101 et seq.,— which are named the Protection from Abuse Act. K.S.A. 60-3101(a). Compare K.S.A. 60-31a01 et seq. ("shall be known and may be cited as the protection from stalking, sexual assault or human trafficking act"). The complaint does not identify any other statutory basis for a violation of K.S.A. 21-5924. Additionally, while Boese's conduct described in the amended complaint fits within conduct proscribed in the PFS statutes, it also fits under the PFA statutes. Compare K.S.A. 60-3107(a)(10) (A court may approve a PFA by "[o]rdering or

6

restraining any other acts deemed necessary to promote the safety of the plaintiff"); K.S.A. 60-31a06(a)(1) (A court may issue a PFS "[r]estraining the defendant from . . . contacting or otherwise communicating with the victim.").

While there may be some overlap in the protections afforded by PFA and PFS orders, it is important to recognize these are materially and legally distinct orders with their own unique procedures, protections, scope, and potential penalties. Compare K.S.A. 60-3107 (describing PFA order procedure, limitations, violations, and criminal penalties) with K.S.A. 60-31a06 (describing PFS order limitations, criminal violations). And while both orders are "protective orders," the structure of K.S.A. 21-5924(a) reflects an appreciation for the substantive differences between PFA and PFS orders by assigning each order its own distinct subsection referencing its unique governing statutes. We agree with the Court of Appeals that "the State's argument that the language of the amended complaint against Boese was broad enough to encompass a conviction under subsection K.S.A. 2020 Supp. 21-5924(a)(6) instead of subsection (a)(1) lacks merit." *Boese*, 2025 WL 574027, at *6.

Having rejected the State's attempt to broaden the language of the charging document via alternative means arguments, we return to our rule from *Fitzgerald*: "[T]he charging document in any specific case . . . sets the outer limits of the conviction or convictions that can result." 308 Kan. at 666. Applied to Boese, the "outer limit" of the convictions which may result from the amended complaint in this case is a violation of a PFA order pursuant to K.S.A. 21-5924(a)(1). It is accepted by all parties that there was no PFA order against Boese on record in this case.

Because it is clear there was no PFA order in this case, the State attempts to characterize the language of the amended complaint as a charging "defect" under *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). The State argues that Boese waived any arguments associated with the complaint by consenting to trial based on the complaint.

7

See K.S.A. 22-3208(4) ("[A] consent to trial upon a complaint . . . shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint . . . other than it fails to show jurisdiction in the court or to charge a crime.").

There are three types of charging-document defects recognized in *Dunn.* The first is when the document does not satisfy the Kansas Constitution's requirement that the charge(s) be filed in the correct court and territory. The second defect is when the charging document does not allege facts that, if proved beyond a reasonable doubt, show the commission of a Kansas crime as required by state statutes. Third, the charging document does not meet the constitutional standards of providing the defendant due process and adequate notice of the charges. The first defect creates a state constitutional error, the second a state statutory error, and the third a violation of federal and state constitutional rights. *Dunn*, 304 Kan. at 815-16. The charging document in this case suffers from none of the infirmities identified in *Dunn*.

We addressed this in *Fitzgerald* and determined that a charging document that successfully and accurately charged one means of committing a crime is not "defective" under *Dunn*. See *Fitzgerald*, 308 Kan. at 664 ("Under *Dunn*, Fitzgerald argued, he was not alleging a defect in the charging document. He was alleging a defect in the proof supporting the verdict on the crime charged. . . . We agree with Fitzgerald's framing of the issue in this case."). Because the complaint was not "defective," the panel was correct that "the State's waiver argument under K.S.A. 2022 Supp. 22-3208(4) fails." *Boese*, 2025 WL 574027, at *3.

Given all this, what impact does the decision to charge Boese with violating a PFA order under K.S.A. 2020 Supp. 21-5924(a)(1) have on this case? The record shows that the district court reviewed the relevant law specific to a violation of a PFS order before unequivocally stating: "I find that he knowingly violated the PFS, and I find him guilty

8

of this." We acknowledge there are other references characterizing Boese's "conviction" as a violation of a PFA order in the record, including the journal entry. However, our review of the record can find no factual or legal determination that Boese was found guilty or ever "convicted" of a violation of a PFA order. Consequently, we determine that Boese's only conviction in the record is for a violation of a PFS order.

Finding that Boese was not convicted of violating a PFA order renders the need for further analysis of Boese's legal arguments regarding whether sufficient evidence supported such a conviction unnecessary. We acknowledge that our reasoning is different from the panel's; however, this court may still affirm the panel as right for the wrong reason. See *State v. Unruh*, 320 Kan. 260, 261, 565 P.3d 825 (2025).

Regardless of whether the State *proved* that Boese was guilty of violating a PFS order, Boese was never charged with and therefore not properly tried for that crime. Because Boese was convicted of a crime he was never charged with, his conviction must be reversed and his sentence vacated. See *Ward*, 307 Kan. at 259-60 (State failed to prove crimes charged, regardless of whether it may have proved another crime; conviction reversed).

The conviction is reversed and the sentence is vacated.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed.

LUCKERT, J., not participating.